(C. D. 831)

STEPHEN RUG MILLS *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 9, 1944)

*Benjamin A. Levett* (*Meyer Ohlbaum* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before TILSON and KINCHELOE, Judges; LAWRENCE, J., not participating.

KINCHELOE, Judge: These suits are for the recovery of certain customs duty alleged to have been improperly assessed by the collector of customs at New York on imported rugs. The merchandise in issue consists of rugs composed wholly or in chief value of cotton, imported from Belgium and Italy. They were assessed for duty at the rate of 35 per centum ad valorem under the provision of paragraph 921 of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

PAR. 921. * * * all other floor coverings, including * * * rugs, wholly or in chief value of cotton, 35 per centum ad valorem.

The importer in its protests claims the merchandise dutiable under the same provision of said act of 1930, as modified by the Belgium-

Luxemburg Trade Agreement, effective May 1, 1935, T. D. 47600, at 20 per centum ad valorem, as "Imitation oriental rugs, wholly or in chief value of cotton."

The contention of the Government is that the characteristic of a cotton imitation oriental rug is that it must have or imitate an oriental design in addition to the pile, and that as the rugs in question did not have such design they were properly assessed for duty under the catch-all provision of said paragraph 921 of the act of 1930 for "all other floor coverings, including * * * rugs, wholly or in chief value of cotton," at 35 per centum ad valorem.

It is not disputed that up to May 1, 1935, the effective date of said trade agreement with Belgium, cotton pile rugs like those under consideration, whether of an oriental design, or of a hooked or colonial design, were all indiscriminately classified and assessed for duty under said provision of said paragraph 921 for "all other floor coverings, including * * * rugs." It also appears that after the trade agreement with Belgium reducing the rate of duty on "Imitation oriental rugs" of cotton to 20 per centum, all such rugs, including those in question, were classified and assessed as cotton imitation oriental rugs up to the time the Commissioner of Customs in T. D. 49161 (72 Treas. Dec. 312) issued the following instructions to collectors of customs:

(6) *Cotton Rugs.*—Cotton rugs, similar to certain rugs of domestic manufacture which are sold under the names of "Trellis" and "Verdure", are not "imitation oriental rugs, wholly or in chief value of cotton", within the meaning of item 921 of the Belgian Trade Agreement and are properly dutiable at the rate of 35 percent ad valorem as floor coverings, wholly or in chief value of cotton, under paragraph 921, Tariff Act of 1930. As this ruling will result in the assessment of duty at a higher rate than it has been the practice to assess, it should be applied to such merchandise only when entered for consumption or withdrawn from warehouse for consumption after thirty days following the publication of this abstract in the weekly TREASURY DECISIONS. Bureau letter to collector of customs, New York, N. Y., September 1, 1937. (32–411/921.)

Of course the foregoing instructions do not attempt to define what a cotton imitation oriental rug is, but evidently simply give two illustrations of what is to be regarded as not of oriental design, namely, those possessing designs in the nature of trellis or lattice work, or in the nature of vegetation such as leaves and trees, etc.

The contention of the plaintiff is that all the rugs in question are commercially known as cotton imitation oriental rugs, irrespective of the designs thereon, and that they are therefore dutiable as such under said paragraph 921 of the tariff act as modified by said trade agreement with Belgium.

Counsel for plaintiff in his brief frankly admits, however, that the rugs in question do not come within the common meaning of the term "imitation oriental rugs," in the following language:

That cotton rugs of this character with a nonoriental design can in no sense be

considered imitation oriental rugs in the common meaning of the various words making up that expression is so obvious that it hardly needs discussion.

At the trial plaintiff introduced in evidence three groups of rugs representing the merchandise under consideration which the collector regarded as not of oriental designs, and therefore not imitation oriental rugs under said trade agreement, and which were accordingly assessed for duty, as theretofore, under the catch-all provision of said paragraph 921 of said Tariff Act. The three groups of rugs were marked in evidence as collective exhibits 1, 2, and 3, and measure from about 24 by 48 inches to 34 by 56 inches. Collective exhibit 1 consists of four rugs labeled "New Avalon-Chinese Ovalette Replica," pattern numbers 8561, 8562, 8568, and 8569, respectively; another rug labeled "Avalon-Chinese Ovalette Replica"; and three rugs labeled "Provincetown," bearing pattern numbers 8554, 8555, and 8557. Collective exhibit 2 consists of three rugs labeled "New Bedford," of pattern numbers 2294, 2297, and 2298. Collective exhibit 3 consists of three rugs labeled "Arcadia," of pattern numbers 8541, 8544, and 8554.

There was also introduced in evidence a group of rugs representative of the kind that were and are still being classified by the collector as cotton imitation oriental rugs, which were marked collective illustrative exhibit A. These are variously labeled "China Pride," number 8662, "Riviera," number 8663, "Royal China," pattern number 8565, "China Craft," number 7738, "Camay," pattern number 8512, etc.

In the case of *Torino Trading Corp.* v. *United States*, Abstract 39295, 1 Cust. Ct. 387, decided Aug. 30, 1938, this court had before it the very same issue as in the present case. There certain rugs assessed at 35 per centum ad valorem under paragraph 921 of the Tariff Act of 1930, as "all other floor coverings," etc., were likewise claimed to be dutiable at 20 per centum ad valorem under the same provision, as modified by the said trade agreement with Belgium. The said rugs were found however to be of colonial design and not of oriental design, and this court, in deciding against the claim of the importer that they were cotton imitation oriental rugs, used the following language:

As having some bearing on the issue herein the plaintiff in its brief quotes from a digest of trade data with respect to products on which concessions were granted by the United States in the Belgo-Luxemburg Trade Agreement, wherein the United States Tariff Commission made the following statement:

The cotton imitation oriental rug is woven with pile on one side in oriental designs and coverings. It is usually made with ground and pile warps of cotton and filling of jute. The stiffness of the jute causes the rug to lie flat on the floor * * *.

The above, we think, at least indicates that the design is of primary importance in construing the provision for "imitation oriental rugs" in said trade agreement. And inasmuch as we consider that the testimony fails to show that the design

in the cotton rugs here in question imitates or is typical of a real oriental rug, we must overrule the claim of the plaintiff.

In the *Torino* case, *supra*, no claim of any special commercial meaning of the statutory term cotton "imitation oriental rugs" different from the common meaning was made by the plaintiff. In the present instance the claim of the plaintiff is predicated entirely on commercial designation, it being practically conceded by plaintiff that the term "imitation oriental rugs," according to the common meaning, would not include rugs that did not imitate oriental designs.

As bearing on the common meaning of "imitation oriental rugs," we quote the definition of the word "imitation" from the Century Dictionary, as follows:

*imitation n.* 1. The act of imitating; an imitating or copying. 2. That which is made or produced by imitating; hence, in general, a likeness or resemblance; a simulated reproduction or representation; more loosely, a likeness or resemblance in general.

*imitation a.* Made in imitation; counterfeit; not genuine; copied: as, *imitation* stone, lace, gold, etc.

The definition of the term "oriental rug" is given in Webster's New International Dictionary, 1936, as follows:

*Oriental rug or carpet.* Any hand-woven or hand-knotted one-piece rug or carpet made in the Orient, esp. in Asia. With the exception of kilims and Sumaks, oriental carpets and rugs have a pile produced by knotting around one or, generally, two warps of cotton or wool, one or several tufts of colored woolen or silk (or in a few instances, cotton) yarn, over each row of which a woof shot is passed. The texture, workmanship, and esp., the designs, vary with the locality in which the rugs are produced and with the mode of living and traditions of the weavers. They fall into six main groups: *Turkish, Persian, Caucasian, Turkoman, Chinese*, and (*East*) *Indian*, but are further divided and subdivided.

Plaintiff, in its effort to prove that the imported merchandise was bought and sold as imitation oriental rugs irrespective of whether the design was oriental or not, called seven witnesses. These witnesses consisted of the head of the import division of the plaintiff company and buyers for various department stores, such as Gimbel's, Hearn's, and Namm's, and Spear's, Kresge's, etc., most of whose experience with rugs like those in issue went back before the passage of the present tariff act, although one of them did not deal in them until after that date.

Briefly stated, the substance of their testimony is to the effect that they bought and sold cotton pile rugs like those in issue throughout the wholesale trade of the United States as imitation oriental rugs whether they were of oriental design or of other design, and that those not of oriental design were of the same material, quality, construction, and were bought and sold at the same price as the rugs of oriental design, *i. e.*, for the same size and weight. While plain-

tiff's witnesses were allowed to testify as to the trade designation of cotton "imitation oriental rugs" as of the effective date of the trade agreement with Belgium, May 1, 1935, over the objection of counsel for the Government, this is of no great importance in the present instance, as most of plaintiff's witnesses testified that such also was the trade designation at and prior to the date of the tariff act of June 17, 1930.

In attempting to prove commercial designation of the imported merchandise as cotton "imitation oriental rugs" counsel for plaintiff first read to the witnesses the definition of the word "imitation" as given by the Century Dictionary, and then asked the witnesses whether that definition of the word "imitation" differed from the trade designation of "imitation oriental rugs," as applied to the imported rugs, to which the plaintiff's witnesses invariably replied that it did not. (R. 55, 90/100, 111, 120/1, 133/7). Plaintiff's witness Kimmel (R. 101) also stated that he would consider the imported rugs to be imitation oriental rugs under the common or dictionary meaning, and plaintiff's witness Goldfarb, speaking as an individual, stated he would consider exhibits 1, 2, and 3, in "common parlance," to be imitation oriental rugs (R. 107), and that the meaning of the statutory term does not differ from the dictionary definition of the word "imitation" (R. 101). And while most of plaintiff's witnesses claimed that the designation of "imitation oriental rugs" was general, uniform, and definite in the wholesale trade of the United States, plaintiff's witness Goldfarb stated that the imported rugs were advertised as reproductions, and that they did not use the word "imitation" except on the retail sales floor (R. 115), and that they used the names of the particular places where these rugs came from (R. 116). And plaintiff's witness Ehrlich testified that he purchased rugs from the Stephen Rug Mills, the importer and plaintiff herein, and that they were purchased under the names of "Avalon," "New Avalon," "Bedford," "New Bedford," and "Provincetown"; that the rugs were ordered by them by these names, and that the Stephen Rug Mills so designated the rugs in their bills (R. 130, 131).

In our opinion commercial designation of the imported merchandise has not been proven under the rule laid down by the decisions of our appellate court. One of the leading cases on the subject is that of *Passaic Worsted Co. et al.* v. *United States*, 17 C. C. P. A. 459, T. D. 43916, wherein the Government sought to prove commercial designation on the tariff term "textile machinery." In holding that such commercial designation had not been established, the court used the following language:

At the risk of unnecessary reiteration, we repeat a suggestion as to this kind of evidence frequently heretofore made by us. If, in the case at bar, it was sought to establish commercial designation of the imported machines as textile

machinery, before attempting to do so it must be legally admitted that they have a *commercial designation which differs from their common designation* and that, under the common designation, they are not textile machinery. Otherwise, and if they are commonly know as textile machinery, no occasion for proof of commercial designation exists. Then, having admitted this necessary legal premise, the next inquiry must be: "By what name are these articles designated uniformly, generally, and definitely in the trade wherever they are bought and sold?" If, to such an inquiry, the witness can respond that they are so designated as textile machinery, the evidence is competent and tends to prove commercial designation. A very good and substantial reason exists for so directing the inquiry. If the witness is uncertain in his statement, such uncertainty will readily appear on cross-examination. If, on the other hand, the witness is asked whether a certain article belongs within a certain class, the answer he gives will simply be his opinion, and the true facts may not be readily available on cross-examination. The rule of commercial designation is a wise one, but the rule is narrow and must be closely adhered to. [Italics ours.]

In the case of *United States* v. *M. J. Brandenstein & Co.*, 17 C. C. P. A. 480, T. D. 43941, it was held (a) that in the absence of evidence to the contrary, the commercial meaning of a tariff term is presumed to be the same as its common meaning; that (b) it is incumbent upon a party who asserts that a tariff term has a commercial meaning different from its common meaning to establish that fact by a preponderance of the evidence; and (c) that if commercial designation is to control the classification of imported merchandise, such commercial designation must be definite, uniform, and general, and not local, partial, or personal. Note also *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T. D. 38550, where it was stated that the rule is not satisfied as to establishing commercial designation where it appears that it was only partial, local, or personal; also *United States* v. *Georgia Pulp & Paper Manufacturing Co.*, 3 id. 410, T. D. 32998, wherein it was held that the commercial meaning must be general, extending over the entire country; that it must be definite in that it is certain of understanding and not ambiguous, and that it must be uniform in that it is the same everywhere in the country.

As opposed to the testimony of plaintiff's witnesses that the imported articles were commercially bought and sold in the trade as cotton imitation oriental rugs, the Government called three witnesses. In view of the fact, however, that plaintiff's claim of commercial designation herein has not, in our judgment, been established under the requirements of the decisions of our appellate court cited, *supra*, we do not find it necessary to go into any detailed summary or discussion of the testimony of the Government's witnesses, although we have carefully considered all of it. Therefore, as the presumption of correctness in favor of the collector's classification and assessment of duty in this case has not been overcome by plaintiff, the protests are hereby overruled as to all of the rugs in question.

Judgment will be rendered accordingly.